IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **ERIC J. DePAOLA,** | ) |
| Plaintiff, | ) Case No. 7:15CV00403 |
| v. | ) **OPINION** |
| **HAROLD CLARKE, ET AL.,** | ) By: James P. Jones |
| | ) United States District Judge |
| Defendants. | ) |

*Eric J. DePaola, Pro Se Plaintiff; J. Michael Parsons, Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for Defendants Harold Clarke, David Robinson, G. K. Washington, Fred Schilling, E. R. Barksdale, S. Fletcher, Huff, and Trent; Carlene Booth Johnson, Perry Law Firm, Dillwyn, Virginia, for Defendants V. Phipps, Dr. Smith, Dr. Mullins, L. Stump, L. Mullins, and T. Cox; and Ashlee Ayers Webster, LeClairRyan, Roanoke, Virginia, for Defendant Dr. McDuffie.*

Eric J. DePaola, a Virginia inmate proceeding pro se, commenced this civil action pursuant to 42 U.S.C. § 1983. DePaola named numerous correctional and medical staff of the Red Onion State Prison ("ROSP") and Virginia Department of Corrections ("VDOC") as defendants, and they have filed motions to dismiss. DePaola has responded to the motions, and the case is ripe for disposition.

I.

DePaola presents two claims about the allegedly insufficient medical treatment he receives at ROSP for physical and mental illnesses. DePaola's litany of dissatisfaction with prison life begins when he entered the VDOC in 2004.

A.

DePaola argues first that defendants violated the Eighth and Fourteenth Amendments by their deliberate acts of denying and delaying treatment of his medical issues, failing to adequately treat his medical issues, or failing to properly train for the proper treatment of his medical issues. DePaola further argues that they violated the Eighth and Fourteenth Amendments by applying VDOC Operating Policy ("OP") 720.1, which dictates that (i) inmates are limited to three medical issues per doctor's visit; (ii) inmates cannot be treated for skin rashes unless the rashes are burning and/or itching; and (iii) a nurse must observe an inmate via the sick call process and approve the inmate's request for treatment and/or a doctor's examination before treatment and/or the doctor's examination may occur.

DePaola states that he has complained about his irritable bowels for the past five years and that his consumption of dairy and white bread exacerbates the symptoms. DePaola also complained about the ineffectiveness of the treatments he received, including medicine, and resultant weight loss. DePaola also complains about a temporary rash he had on his penis.

On October 17, 2014, Nurse Cox consulted with DePaola about his discomfort and pain in his bowels and the rash on his penis. Nurse Cox told

DePaola to "stay away from foods that bother" him, and noted no treatment occurs for skin rashes that do not burn or itch. DePaola does not allege that he told Nurse Cox that his rash burned or itched. DePaola filed a complaint about Nurse Cox's responses.

In response to DePaola's additional sick call requests, DePaola met Nurse Mullins on December 1, 2014, and told her about his bowels and penis. DePaola told Nurse Mullins he would not withdraw his complaint about Nurse Cox, and Nurse Mullins responded that DePaola "needed to stop crying [because] the state don't [sic] care about those issues." Nurse Mullins refused to add DePaola to the list to see the doctor and walked away from DePaola's cell without measuring DePaola's vital signs. DePaola also filed a complaint about Nurse Mullins' conduct.

On December 23, 2014, DePaola met with Dr. Mullins. DePaola explained that the prescriptions for his bowels did not help, especially when he "consume[d] dairy & white bread products. [He] further told [Dr. Mullins] that [the] rash was persistent." (Compl. 6, ECF No. 1.) Dr. Mullins "then proceeded to prescribe the same meds that . . . [didn't] work & advised [DePaola] to stay away from foods [he] [couldn't] eat." "They told him that there is nothing he could do about [his] diet." (*Id*.) DePaola complained that he had "already lost a lot of weight d[ue] to

- 3 -

not eating bothersome foods," but Dr. Mullins said, "There is nothing we can do," despite ordering lab work to test for Inflammatory Bowel Disease. (*Id.* at 7.) DePaola also alleges that Dr. Mullins ignored his complaints about the rash. Dr. Mullins said, "[W]e don't treat rashes that don't burn or itch," and allegedly ignored DePaola's response, "[I]t does." (*Id.*)

DePaola filed an informal complaint, to which Nurse Phillips responded. Nurse Phillips explained that, per OP 720.1, DePaola was seen for three complaints — gas, cramps, and mucus in stools — and that he should submit another sick call request to discuss additional issues. Nurse Phillips also stated that Dr. Mullins was correct "about the statements in re: to [his] diet & rash." (*Id.*) Warden Barksdale and VDOC Health Services Director Schilling affirmed Nurse Phipps' response during their administrative reviews.

On January 28, 2015, Nurse Stump allegedly refused to assess DePaola for a sick call request, did not render treatment, and tried to force DePaola to sign a refusal form.

On February 3, 2015, Dr. Smith consulted with DePaola about the lab work ordered on December 23. Dr. Smith reviewed the results and told DePaola, "You're clean & going to live for a long time." (*Id.* at 8.) DePaola acknowledges that the rash had cleared by that time but left "substantial scarring" on his penis.

- 4 -

On April 28, 2015, DePaola met Dr. Smith again and complained of his ongoing bowel issues and weight loss. Dr. Smith ordered more lab work — a RAST test[1] — and stated, "[T]here is nothing else they will let me do." (*Id.*)

DePaola alleges that the medications prescribed in December 2014 were canceled in March 2015 and, since then, he has not received treatment other than lab work for the ongoing bowel problem. DePaola alleges he repeatedly notified Warden Barksdale and Director Schilling that all treatment rendered for the symptoms of irritable bowel syndrome had been ineffective.

B.

DePaola argues second that defendants violated the Eighth and Fourteenth Amendments by being deliberately indifferent to serious mental health needs, not treating or diagnosing his mental health needs, and by not properly training others on appropriate treatment of his mental health needs. DePaola alleges he has been diagnosed with, and treated for, several mental illnesses between six years old and being admitted into the VDOC in 2004. DePaola says he paces his cell floor to the point of exhaustion and physical pain due to constant, extreme agitation and hyperactivity. Alternatively, DePaola is completely overwhelmed with depression

---

[1] A RAST test is a blood test to determine possible allergens. *See Allergies Tests and Diagnosis*, http://www.mayoclinic.org/diseases-conditions/allergies/basics/tests-diagnosis/con-20034030 (last visited Sept. 21, 2016).

and hopelessness and lies or sits on his bed for hours and days at a time. DePaola also says he becomes sleepless, "like a strong trance like stuck feeling," due to constant, extremely bizarre thoughts. (*Id*. at 11.) DePaola alleges he "has repeatedly attempted to obtain help from . . . E.R. Barksdale, F. Schilling, S. Fletcher, Dr. McDuffie, Huff & Trent verbally &/or written, to no avail." (*Id*.)

DePaola believes his mental health issues are well-documented in a state-court presentence report used to determine his competency to stand trial in 2003. Further, Depaola says he told prison officials about his mental health history and issues during his admission into the VDOC in 2004. Although DePaola received a mental health code upon admission into the VDOC, he claims he has never received psychotherapy or mental health treatments in the VDOC. DePaola further complains that he has not been able to speak to an institutional psychiatrist or psychologist concerning his mental illnesses and speculates that his mental health code has been lowered to "zero" for reasons unknown to him.

## II.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether the pleader has properly stated a cognizable claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The defendants argue that the Complaint fails to state a claim and that the limitations period had expired for many of DePaola's complaints about prison life. A Rule 12(b)(6) motion to dismiss on the statute of limitations is available "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). As such, all facts necessary to the defense must "clearly appear[] on the face of the complaint." *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).

A.

Federal civil rights actions against state officials under § 1983 are governed by the statute of limitations for personal injuries in the state where the tort allegedly occurred. *See, e.g.*, *Owens v. Okure*, 488 U.S. 235, 239-40 (1989). The applicable statutory filing period for a § 1983 claim arising from events in Virginia is two years. Va. Code Ann. § 8.01-243(a). A claim accrues when the plaintiff knows enough about the harm done to him to bring his lawsuit. *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). Thus, a claim

- 7 -

based on events that occurred in Virginia must be brought within two years from the time when the plaintiff knew enough facts to bring his lawsuit.

DePaola complains about events as long ago as 2004, but he did not commence this action until July 19, 2015, at the earliest.[2] Consequently, DePaola's complaints about prison life that accrued before July 19, 2013, are barred by the two-year limitations period.

B.

"Deliberate indifference" to an inmate's "serious medical needs" is a violation of the Eighth Amendment's ban on cruel and unusual punishment and is actionable via § 1983. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference requires a state actor to have been personally aware of facts indicating a substantial risk of serious harm, and the actor must have actually recognized the existence of such a risk. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). A health care provider may be deliberately indifferent when the treatment provided is so grossly incompetent, inadequate, or excessive as to shock the conscience or is

---

[2] A pro se inmate's complaint is deemed filed with court when the inmate delivers it to prison authorities for mailing to the court. *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735-36 (4th Cir. 1991).

- 8 -

intolerable to fundamental fairness. *Id.* A non-medical prison official may be liable if a plaintiff shows that the official was personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or was deliberately indifferent to the medical provider's misconduct when even a lay person would understand that the medical provider is being deliberately indifferent. *Id.* at 854. Non-medical supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel. *Id.* Supervisory liability is not established merely by showing that a subordinate was deliberately indifferent to a plaintiff's serious medical need. *Id.* A "serious . . . medical need" is a condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks and citation omitted).

Claims of medical malpractice and negligent diagnosis are not cognizable via § 1983. *See Estelle*, 429 U.S. at 105-06. ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Similarly, the deliberate indifference standard "is not satisfied by . . . mere disagreement concerning '[q]uestions of medical judgment.'" *Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013) (unpublished) (quoting *Russell v. Sheffer*,

- 9 -

528 F.2d 318, 319 (4th Cir. 1975)).

DePaola fails to describe how the temporary rash on his penis constituted a serious medical need. DePaola did not tell Nurse Cox or Nurse Mullins that the temporary rash caused burning or itching, and DePaola does not allege that he described the rash to Dr. Mullins in such a way that the rash would be an obvious medical necessity that even a lay person would easily recognize the necessity for a doctor's attention. Furthermore, DePaola acknowledges the rash resolved on its own, and Depaola does not suggest how Dr. Mullins' decision to not treat the rash shocks the conscience or is intolerable to fundamental fairness.

Even if DePaola's gastrointestinal distress constituted a serious medical need, he fails to describe a defendant's deliberate indifference. Nurse Cox told DePaola to stop eating the dairy and white breads that upset his bowels. Assuming the truth of DePaola's allegations that Nurse Mullins refused to render medical services[3] or add DePaola to the doctor's list because of DePaola's administrative complaint about Nurse Cox, DePaola was still placed on the

---

[3] It was of no consequence that Nurse Mullins did not measure DePaola's vital signs on December 1, 2014. Even if that failure violated VDOC policy, a claim that prison staff have not followed a prison's policies or procedures does not state a constitutional claim. *See, e.g.*, *United States v. Caceres*, 440 U.S. 741, 752-55 (1979); *Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue).

- 10 -

doctor's list and was seen by a doctor three weeks later on December 23, 2014. DePaola fails to describe how the three-week delay in seeing a doctor, even if wholly attributable to Nurse Mullins, resulted in "substantial harm." *See Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008) (unpublished). This showing is particularly difficult for DePaola since he admitted to Dr. Mullins on December 23, 2014, that his bowel discomfort had continued because he continued to eat the foods that caused his bowel discomfort. Dr. Mullins' decision to continue the already-prescribed medication after reminding DePaola to stay away from foods he couldn't eat does not shock the conscience and is not intolerable to fundamental fairness. Furthermore, Dr. Mullins authorized lab work to test for Inflammatory Bowel Disease, and the fact DePaola desired more complex and immediate medical treatments is not actionable via § 1983.

Although Nurse Stump allegedly refused to assess DePaola for a sick call request and to treat him for an unspecified issue, DePaola fails to describe for what consequence Nurse Stump is liable. While she allegedly refused services on January 28, 2015, DePaola met with Dr. Smith less than a week later. Dr. Smith reviewed the lab work ordered in December and told DePaola, "You're clean and going to live for a long time." (Compl. 8, ECF No. 1.) Nonetheless, Dr. Smith met DePaola again on April 28, 2015, and ordered new lab work. DePaola does

- 11 -

not allege any defendant's involvement with the cessation of a medication in March 2015 or that the cessation resulted in any harm.

DePaola has received on-going medical consultations, lab work, and medication for his bowels. His dissatisfaction with the course of treatment, undoubtedly complicated by his admitted consumption of dairy and white bread that cause his symptoms, is not sufficient to state an Eighth Amendment claim about his bowels.

DePaola also fails to state a claim that defendants were deliberately indifferent to a serious mental health need. Nothing indicates that any defendant was aware, or would be aware, of the two reports prepared in 2003 discussing his crimes and mental health history. While DePaola may have had a mental health code upon admission into the VDOC, he does not suggest what that designation in 2004 meant or required of defendants since July 19, 2013. Furthermore, DePaola's description of pacing, a trance-like feeling, or "depression" does not describe a serious medical need. DePaola alleges merely that "depression" means he lies or sits on his bed for hours and days at a time, which is an expected consequence of being housed in segregation at ROSP and, in that context, does not describe a condition "that even a lay person would easily recognize the necessity for a

- 12 -

Case 7:15-cv-00403-JPJ-RSB   Document 46   Filed 09/27/16   Page 12 of 14   Pageid#: 232

doctor's attention." *Iko*, 535 F.3d at 241 (internal quotation marks and citation omitted).

DePaola also fails to state an actionable claim about OP 720.1. DePaola alleges that OP 720.1 violates the Eighth and Fourteenth Amendments because it dictates that (i) inmates are limited to three medical issues per doctor's visit; (ii) inmates cannot be treated for skin rashes unless the rashes are burning and/or itching; and (iii) a nurse must observe an inmate via the sick call process and approve the inmate's request for treatment and/or a doctor's examination before treatment or the doctor's examination is allowed. However, DePaola fails to meet his burden to disprove the validity of a prison regulation. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Nothing in the OP mandates deliberate indifference to a serious medical need and, as already discussed, applying the policy to DePaola did not result in deliberate indifference to a serious medical need. Clearly, the policy is rationally related to the reasonable penological goal of rationing scarce resources among many inmates demanding medical services to treat various, and perhaps questionable, medical needs. *See, e.g., Turner v. Safley*, 482 U.S. 78, 89 (1987). DePaola is not entitled to his choice of medical care; he is entitled only to the level of medical care necessary to keep him from suffering severe illness or injury. *See Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). Accordingly, DePaola

fails to state that the OP was applied or is facially in violation of the Eighth or Fourteenth Amendments.

III.

For the stated reasons, I conclude that DePaola fails to state a claim upon which relief may be granted. Accordingly, I will grant defendants' motions to dismiss and strike the case from the active docket.

DATED: September 27, 2016

/s/ James P. Jones
United States District Judge